**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DIVLEND EQUIPMENT LEASING, LLC,**

                      **Appellant,**

vs.                                               5:16-cv-00387
                                                              (MAD)

**MARY LANNON FANGIO, in her capacity as trustee**
**pursuant to 11 U.S.C. § 1104 of the bankruptcy estate**
**of Ajax Integrated, LLC,**

                      **Appellee.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**HANCOCK, ESTABROOK LAW FIRM**     **MANUEL A. ARROYO, ESQ.**
100 Madison Street, Suite 1500            **R. JOHN CLARK, ESQ.**
Syracuse, New York 13202
Attorneys for Appellant

**CROSSMORE LAW FIRM**                **EDWARD Y. CROSSMORE, ESQ.**
115 West Green Street
Ithaca, New York 14850
Attorneys for Appellee

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court is Appellant DivLend Equipment Leasing, Inc.'s ("Appellant") emergency motion for an order staying proceedings in the United States Bankruptcy Court, including an evidentiary hearing scheduled for April 28, 2016, pending appeal of a March 23, 2016 Bankruptcy Court order. *See* Dkt. No. 1.

### II. BACKGROUND

    The Court assumes the parties' familiarity with the more detailed underlying facts of this case, as described in the Bankruptcy Court's March 23, 2016 Order, and only a brief review of the

relevant facts is provided herein. *See* Dkt. No. 1-3. Mary Lannon Fangio ("Appellee" or "Trustee"), the chapter 11 trustee of the Debtor estate of AJAX Integrated, LLC ("Debtor"), commenced the underlying action in Bankruptcy Court seeking to avoid Appellant's security interest in thirty vehicles subject to New York certificates of title (the "Vehicles") pursuant to 11 U.S.C. § 544. *See* Dkt. No. 1-3 at 2-3.

On May 20, 2013, Appellant loaned Debtor approximately $1.1 million pursuant to an equipment lease agreement (the "Agreement"). *Id.* at 5. The Agreement provides, *inter alia*, that the thirty Vehicles purchased by Debtor would be collateral for the loan and be subject to a lien in Appellant's name. The Agreement states that Debtor "will execute financing statements or other documents which [Appellant] requests to evidence [its] and/or [Debtor's] interest in [the Vehicles]." *Id.* Appellant entered into the Agreement and advanced the money to Debtor prior to being listed as a lienholder on the certificates of title for the Vehicles with the New York Department of Motor Vehicles ("DMV"). *Id.* at 6. Approximately one month later, Appellant mailed Debtor the required notice of lien forms and requested that they be signed and returned. *Id.* Despite several repeated requests by Appellant, Debtor never signed or returned the notice of lien forms to the DMV. *Id.* Therefore, Appellant never perfected its lien on the Vehicles under New York law.[1] Debtor filed the underlying bankruptcy action on November 17, 2014, and the Vehicles were sold pursuant to a court order with the proceeds being held by the Trustee in escrow. Both parties filed cross motions for summary judgment, with the Trustee seeking to avoid Appellant's security interest in the Vehicles, and Appellant seeking the imposition of a constructive trust on the bankruptcy estate for the value of the Vehicles.

---

[1] New York Vehicle and Traffic Law § 2118 states that a security interest is perfected in a motor vehicle only by delivering to the DMV (i) the existing certificate of title, if any, (ii) a notice of lien form, and (iii) the required fee. N.Y. Veh. & Traf. Law § 2118.

On October 9, 2015, Appellant subpoenaed Debtor's computer server. *Id.* Upon delivery of the server to Appellant's counsel, it was discovered that several of the files contained therein had been deleted. Forensic examiner Anthony Martino examined the server and determined that the files had been deleted one day prior to Debtor's production of the server. Appellant filed a motion for sanctions for the spoilation of evidence pertaining to this action.

On March 23, 2016, Bankruptcy Court Judge Cangilos-Ruiz ruled on the motions for summary judgment, finding that Appellant had failed to perfect its security interest in the Vehicles, and that no equitable remedy was appropriate in this case to defeat the Trustee's priority of interest in the Vehicle proceeds. Thus, summary judgment was entered in Appellee's favor. The Bankruptcy Court severed the sanctions motion for spoilation of evidence, and set an evidentiary hearing on that issue for April 28, 2016.

Appellant filed a notice of appeal on April 5, 2016. *See* Dkt. No. 1-4. Thereafter, Appellant made a motion with the Bankruptcy Court pursuant to Rule 8007 to stay the evidentiary hearing pending the outcome of the appeal. *See* Dkt. No. 1-5. Judge Cangilos-Ruiz denied the request for stay in an April 8, 2016 order. *See id.* On April 18, 2016, Appellant filed the instant emergency order to show cause renewing its request for a stay of the evidentiary hearing pending appeal. *See* Dkt. No. 1.

### III. DISCUSSION

**A.    Standard of review**

Federal Rule of Bankruptcy Procedure 8007 (formerly Rule 8005) governs motions to stay pending appeal of bankruptcy court orders. *See* Fed. R. Bankr. P. 8007. Generally, a Rule 8007 motion must first be made in the bankruptcy court. *See id.* A motion for such relief may subsequently be made in the district court so long as it states "that the [bankruptcy] court has

ruled [on the motion] and set[s] out any reasons given for the ruling." *Id.* at 8007(b)(2)(B). In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and *de novo* review to conclusions of law. *See In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699, 703 (S.D.N.Y. 2002) (citation omitted). "[T]he decision to grant or deny a stay pending appeal is within the discretion of the bankruptcy court." *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y. 1995) (citations omitted). Thus, the district court "review[s] the bankruptcy court's decision [to deny a stay pending appeal] only for abuse of discretion." *Id.* (citations omitted).

The Second Circuit has established a four-pronged test for determining whether to grant a motion for a stay pending an appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (quotations omitted); *accord In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. B.A.P. 1996) (citations omitted); *In re Turner*, 207 B.R. 373, 375 (2d Cir. B.A.P. 1997). This standard has been routinely applied to a motion for a stay of an order of a bankruptcy court, pending an appeal to the district court. *See, e.g.*, *In re Rossi*, No. 1:08–MC–0081, 2008 WL 4519008, *1 (N.D.N.Y. Sept. 26, 2008); *In re Brunswick Baptist Church*, No. 1:05–CV–1085, 2007 WL 294087, *2 (N.D.N.Y. Jan. 25, 2007).

"Failure to satisfy one prong of this standard for granting a stay will doom the motion."[2] *In re Turner*, 207 B.R. at 375; *accord In re Bijan–Sara Corp.*, 203 B.R. 358, 360 (2d Cir. B.A.P.

---

[2] While several lower courts have addressed the four factors as a balancing test, the Second Circuit has not departed from the rigid approach applied in *In re Turner*. *See In re CPJFK, LLC*, 496 B.R. 65, 68 (Bankr. E.D.N.Y. 2011).

4

1996); *In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003) (citation omitted).  As a result, "[t]he moving party must show 'satisfactory' evidence on all four criteria." *In re Bijan–Sara Corp.*, 203 B.R. at 360 (citation omitted); *accord In re Albert*, No. 99–31520, 2002 WL 1432663, *3 (Bankr. S.D.N.Y. June 20, 2002) (citation omitted).

### B.     Appellant's Motion

#### *1. Irreparable Harm*

"A showing of probable irreparable harm is the principal prerequisite for the issuance of a [Rule 8007] stay.  Irreparable harm must be neither remote nor speculative, but actual and imminent." *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (quoting *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007)) (other citations omitted).  In certain circumstances, "the risk that an appeal may become moot in the absence of a stay pending appeal satisfies the irreparable injury requirement." *In re Adelphia Commc'ns Corp.*, 361 B.R. at 347.  However, a "majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *In re Gen. Motors Corp.*, 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) (quoting *id.*).

Appellant contends that certain arguments in its pending appeal will be rendered moot in the absence of a stay.  First, Appellant claims that the Bankruptcy Court committed reversible error in only requiring Debtor and Debtor's agents to be present at evidentiary hearing, despite the server being in the possession of Appellee's attorney for a period of approximately an hour and a half on October 16, 2015. *See* Dkt. No. 1-7 at 10-11; Dkt. No. 1-3 at 8.  While this portion of Appellant's appeal would potentially be mooted if the evidentiary hearing proceeds as scheduled, it is only a minor issue of the appeal, has no significant bearing on the substantive issues of the case, and is not likely to succeed.

5

Anthony Martino, the forensic examiner who examined Debtor's server, concluded that any information deleted from the server was deleted on October 15, 2016. *See* Dkt. No. 1-6 at ¶ 8. Thus, any files that were deleted from the server were deleted prior to it being turned over to Appellee's attorney, while it was still in Debtor's sole possession. Moreover, the parties were ordered to participate in a conference call with the Bankruptcy Court to determine if the testimony of any other individuals would be helpful for determining the spoilation issues. *See* Dkt. No. 1-2 at 3. Thus, the attendance of Debtor and its agents at the evidentiary hearing will sufficiently address the issues surrounding the deleted information, such that Appellant will suffer no irreparable injury in this regard absent a stay.

To the extent that Appellant argues that its appeal of the Bankruptcy Court's denial of its request for an adverse spoilation inference will be mooted absent a stay, such argument likewise fails to present an irreparable injury. If the reviewing court finds that the Bankruptcy Court improperly failed to grant an adverse spoilation inference, which, as discussed below, is not likely, then that court can grant such an inference in Appellant's favor, notwithstanding the outcome of the evidentiary hearing to impose monetary damages for spoilation sanctions. *See* Dkt. No. 1-2.[3] In light of the minor components of Appellant's appeal that would allegedly be mooted absent a stay, coupled with the reviewing court's ability to grant effective relief if the appeal is ultimately successful, Appellant has failed to show that it will suffer an irreparable injury absent a stay.

### 2. Likelihood of Success

---

[3] The Bankruptcy Court specifically noted that the outcome of the spoilation hearing would have no bearing on the substantive issues presented in the motion for summary judgment. *See* Dkt. No. 1-3 at 22 n.18.

6

Appellant asserts that its appeal will be successful based on the following arguments: "(i) the Bankruptcy Court misapplied the decisions of inferior courts rather than the law upheld by the Second Circuit Court of Appeals; (ii) the Bankruptcy Court erroneously set aside the governing and applicable precedent of the Second Circuit, and instead chose to apply the decisional law from a foreign circuit that is not the law in New York; (iii) the court below committed reversible error when it failed to find unjust enrichment; and (iv) the Bankruptcy Court committed reversible error by failing to grant an adverse spoilation inference." Dkt. No. 1-7 at 12.

The majority of Appellant's motion relies on the argument that a constructive trust should be imposed on the bankruptcy estate for the Vehicle proceeds due to Debtor's allegedly wrongful conduct in failing to return the signed notice of lien forms. To support this argument, Appellant relies exclusively on *In re Howards Appliance Corp.*, 874 F.2d 88 (2d Cir. 1989) and *In re Flanagan*, 503 F.3d 171 (2d Cir. 2007). In *In re Howard's Appliance Corp.*, the debtor entered into a security agreement which gave the plaintiff creditor a security interest in certain air conditioners held by the debtor. 874 F.2d at 89. The security agreement stated that the collateral shall be kept at the debtor's store in New York. *Id.* at 90. The plaintiff creditor perfected its security interest in New York by filing a UCC-1 financing statement. *Id.* Thereafter, without the plaintiff's knowledge and in violation of the security agreement, the debtor moved the collateral to one of its stores in New Jersey. The plaintiff failed to perfect its security interest in the collateral in New Jersey prior to the debtor filing Chapter 11 bankruptcy. *Id.* The Second Circuit held that the imposition of a constructive trust on the collateral in the bankruptcy estate was proper because "but for the debtor's misconduct, the trust beneficiary would have perfected his security interest in the rest of the trust and thus would have prevailed over the debtor as well as the debtor-in-possession." *Id.* at 93. The court placed significant emphasis on the fact that the plaintiff creditor

7

never knew that the debtor moved the collateral out of New York and, thus, never knew that it lacked a perfected interest in the lien.  The Second Circuit noted that, had the debtor informed the plaintiff creditor that it had moved the collateral, the plaintiff would have been responsible for taking the steps to perfect its interest in New Jersey.  *Id.* at 95.  Since the plaintiff had no knowledge that it lacked a perfected interest, due solely to the debtor's secretive acts in violation of the security agreement, the imposition of a constructive trust was appropriate.  *Id.*

      The Court notes that the key factor to the Second Circuit's decision to impose a constructive trust in *In re Howard's Appliance*, that the creditor was unaware that it lacked a perfected interest in the collateral, is missing in this case.  Here, Appellant was fully aware that it never possessed a perfected interest in the Vehicles.  Despite Appellant's knowledge that it did not possess a secured interest, it did not require Debtor to file the notice of lien forms prior to loaning the $1.1 million, it never declared default under the Agreement after Debtor failed to respond to its requests to file the notice of lien forms, and it waited ten months after making the initial loan to determine whether it could perfect its interest in the Vehicles without Debtor returning the signed forms.  *See* Dkt. No. 1-3 at 17-18.  Thus, Appellant's actions in this case are easily distinguishable from those of the creditor in *In re Howard's Appliance* that properly perfected its interest in the collateral under the terms of the security agreement, and only subsequently lost that perfected interest due to the debtor's wrongful and secretive actions.

      Appellant's repeated reliance on *In re Flanagan* is entirely misplaced.  In that case, the plaintiff creditor received an approximately $90,000 judgment in the United States District Court for the District of Connecticut against the debtor.  *In re Flanagan*, 503 F.3d at 176.  At the time of the judgment, the debtor owned stock certificates representing a 50 percent equity interest in certain companies, which were valued in excess of $100,000.  The plaintiff creditor sought to

8

locate the debtor's stock certificates to satisfy its judgment, but the debtor refused to produce the stock certificates despite a turnover order from the district court requiring him to do so. *Id.* After the debtor filed for bankruptcy, the plaintiff creditor sought to impose a constructive trust over the stock certificates for the satisfaction of its money judgment. *Id.* at 177. The plaintiff creditor argued that "it was solely because of [the debtor's] wrongful concealment of his equity interest in [the companies] that they had been unable to execute upon the stock and secure the federal judgment and other judgments they had obtained prior to the 90-day preference period." *Id.* In rejecting the plaintiff creditor's argument that a constructive trust should be imposed, the Second Circuit reasoned that a constructive trust was not appropriate in the bankruptcy action, despite the debtor's obvious misconduct in concealing his ownership interest in the stock certificates, because the debtor had not been unjustly enriched by his wrongful conduct. Specifically, the court noted that

> the argument that [the judgment debtor] would be unjustly enriched absent the imposition of a constructive trust is unconvincing when made in the context of a bankruptcy proceeding. *See First Cent.* [*Fin. Copr.*], 377 F.3d [209,] 218 [(2d. Cir. 2004)] ("[W]e believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not. . . ."). It has been observed that the "equities of bankruptcy are not the equities of the common law." *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir.1994). This is particularly true in the context of constructive trust law. . . . [T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust *res*. 11 U.S.C. § 541(a)(1), (d); *Howard's Appliance*, 874 F.2d at 93. It is therefore not the debtor who generally bears the burden of a constructive trust in bankruptcy, but the debtor's general creditors. This type of privileging of one unsecured claim over another clearly thwarts the principle of ratable distribution underlying the Bankruptcy Code. As a consequence bankruptcy courts have been reluctant, absent a compelling reason, to impose a constructive trust on the property in the estate. See *First Cent.*, 377 F.3d at 217–18 (collecting cases); *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 436

>   (5th Cir.1994); *Omegas Group*, 16 F.3d [1443,] 1452 [(6th Cir.
>   1994)] ("Constructive trusts are anathema to the equities of
>   bankruptcy since they take from the estate, and thus directly from
>   competing creditors, not from the offending debtor.").

*In re Flanagan*, 503 F.3d at 182.

Appellant's repeated reliance upon *In re Flanagan* case is confounding since the Second Circuit came to the same conclusion as the Bankruptcy Court did in the present action – and the exact opposite of what Appellant claims should be the result on appeal – that a constructive trust should not be imposed upon property in the bankruptcy estate as a result of the debtor's pre-bankruptcy misconduct.

### *a. Application of Second Circuit Precedent*

Appellant contends that the Bankruptcy Court incorrectly applied *In re Cooley*, 2001 WL 135822 (W.D.N.Y. Feb. 13, 2001), in concluding that "a party seeking to prevent avoidance of its interests may not raise any misconduct or malfeasance by the debtor as a defense, as the Trustee in its capacity as Trustee is not estopped by the debtor's misconduct." Dkt. No. 1-7 at 13. Appellant asserts that the holding *In re Howard's Appliance*, conflicts with the Bankruptcy Court's decision on this issue. *See* Dkt. No. 1-7 at 13.

In *In re Cooley*, the debtor refinanced a vehicle purchase loan with a credit union lender, executing a note and security agreement indicating the vehicle as security for the loan amount. *In re Cooley*, 2011 WL 135822, at *1. Thereafter, the debtor signed a notice of lien form that identified the lien in favor of the credit union lender and filed it with the New York State DMV. *Id.* The DMV informed the credit union that the title, which had allegedly been sent to the lender, had to be filed with the DMV before the credit union's lien on the vehicle would be perfected. The credit union proceeded to call the debtor "at least twelve time on approximately a monthly

10

basis, to obtain the title." *Id.* The issue the court was presented with was "whether a lien is perfected when the lienholder fails to deliver one of the necessary documents to the DMV . . ." *Id.* at *3. The court considered the credit union's argument that the reason it had not delivered the title was due to the debtor's repeated failure to provide it. *Id.* In rejecting this argument, the court reasoned that the credit union "cannot rely on the alleged misrepresentations by [the debtor] . . . because it is the trustee, acting on behalf of all creditors, who is seeking to avoid this lien, not [the debtor]. . . . [A]ccordingly, any defenses [the credit union] may have had against [the debtor] based on her alleged misrepresentations are immaterial." *Id.* The court held that, notwithstanding the credit union's efforts to obtain the title and the debtor's failure to provide the same, the lien had not been perfected in accordance with the vehicle and traffic laws within ninety days prior to the bankruptcy filing, and, thus, the trustee could avoid the lien. *Id.*

    The Court finds that the Bankruptcy Court's reliance on *In re Cooley,* as opposed to *In re Howard's Appliance*, to hold that a constructive trust was inappropriate in this case is not likely to be reversible error. The factual similarity of *In re Cooley*'s subject matter requiring specific filing of the title and notice of lien with the DMV to perfect a lien on a vehicle, coupled with the credit union's knowledge that it had not filed the appropriate documents, notwithstanding the debtor's allegedly wrongful actions in failing to produce the title, are strikingly similar to the facts of the instant case. This is contrasted with the plaintiff creditor in *In re Howard's Applicance*, that properly perfected its interest in the collateral under the security agreement in New York, and was never on notice that the collateral had moved to New Jersey so as to require the filing of another financing statement to again perfect the interest. Here, Appellant never perfected its lien on the vehicles despite being aware of the explicit requirements of the vehicle and traffic law that the

11

notice of lien must be filed with the DMV. Accordingly, the Bankruptcy Court's reliance on *In re Cooley* is not likely to constitute reversible error.

### *b. Application of First Circuit Law*

Appellant contends that the Bankruptcy Court incorrectly relied upon First Circuit precedent in deciding that Appellant's lack of due diligence precludes equitable remedies in this case. *See* Dkt. No. 1-7 at 14-15. Appellant argues that the Bankruptcy Court should have instead applied *In re Howard's Appliance* and *In re Flanagan* to impose a constructive trust, rather than rely on non-precedential holdings from other circuits. As previously noted, *In re Howard's Appliance* and *In re Flanagan* do not support Appellant's argument on this issue. Moreover, the Second Circuit has stated that "[a]n equitable claim cannot proceed where the plaintiff has had and let pass an adequate alternative remedy at law." *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986). As the Bankruptcy Court noted, "[t]he record is devoid of [Appellant] exercising the basic precautions of a prudent lender as evidenced by its failure to act and the lateness and ineffectiveness of the actions it took." Dkt. No. 1-3 at 17. Specifically, Appellant "never declared a default after requesting for two months that the Notice of Lien Forms be signed and returned." *Id.* at 17-18. Had Appellant sought to enforce its rights under the Agreement, it would have had ample routes of legal recourse to protect its interest without needing to resort to equitable remedies. Accordingly, the Court finds that Appellant is unlikely to succeed on this argument of its appeal that the Bankruptcy Court improperly relied upon First Circuit precedent.

### *c. Unjust Enrichment and Adverse Spoilation Inference*

12

Appellant's arguments that the Bankruptcy Court erred in failing to find unjust enrichment and refusing to grant an adverse spoilation inference generally mirror its arguments for why a constructive trust should have been imposed, again relying solely on *In re Howard's Appliance* and *In re Flanagan*. *See* Dkt. No. 1-7 at 17-18. The Bankruptcy Court held that even if it were to "grant the adverse inference that the deleted files related to [Appellant's] efforts to have the Notice of Lien Forms signed or provided evidence of Debtor's conscious refusal to sign them, such evidence would not alter the court's decision not to impose a constructive trust." Dkt. No. 1-3 at 21. In light of the previous consideration of Appellant's constructive trust argument, the Court finds that Appellant is likewise unlikely to succeed on its appeal of the failure to find unjust enrichment and the refusal to grant the adverse spoilation inference.

The Court finds that, in light of Appellant's lack of an irreparable injury, coupled with its failure to provide any compelling support for its arguments on appeal, Judge Cangilos-Ruiz's denial of Appellant's request for a stay pending appeal was not an abuse of discretion. Since Appellant failed to prove each of the four required elements to grant a stay under Rule 8007, the Court denies the instant motion for a stay pending appeal.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, Appellant's submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Appellant's motion for a stay pending appeal is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 22, 2016
       Albany, New York

Mae A. D'Agostino
U.S. District Judge